UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GALIANO TIRAMANI, | : |
| Plaintiff, | : |
| v. | : Case No. 3:16-cv-431(RNC) |
| OFFICER C. JOHNSON | : |
| OFFICER D'INVERNO, | : |
| OFFICER J. BERRY and | : |
| OFFICER WELSH, | : |
| Defendants. | : |

RULING AND ORDER

Plaintiff Galiano Tiramani brings this action under 42 U.S.C. § 1983 seeking damages for a warrantless entry into his residence. Named as defendants are four officers of the Greenwich Police Department ("GPD"): Carl Johnson, John D'Inverno, Joel Berry and Sean Welsh. The defendants have moved for summary judgment arguing that the entry was reasonable and they are entitled to qualified immunity. I agree that the officers are protected by qualified immunity and therefore grant the motion.

I. Background

The following facts are undisputed unless otherwise noted. In July 2014, plaintiff entered into a five-year lease agreement with the owner of a large home in Greenwich ("the property"). At the time he entered into the lease, foreclosure proceedings initiated by Bank of New York Mellon ("BNYM") had been pending for five years. By November 2015, when the events giving rise to

this case occurred, the property had been foreclosed and an eviction proceeding was pending against the plaintiff.

During the time plaintiff resided at the property, it was known by his friends and others in the community as the "Hobo Mansion." The property had been abandoned for several years and was in poor condition when he moved in. He subleased rooms to several "roommates," and made some changes to the property, including converting the backyard into a dirt bike track. Plaintiff and others created a "Hobo Mansion" page on Facebook, which advertised parties at the property, in addition to chronicling some of the residents' escapades.

During plaintiff's tenancy at the property, neighbors filed numerous complaints with the GPD and other Greenwich officials. They complained of persons riding dirt bikes at excessive speeds in the neighborhood, loud music and rowdy behavior.[1] In July 2015, the Greenwich Zoning Enforcement Office informed BNYM that activities at the property violated the Town's nuisance code.

At some point in the fall of 2015, plaintiff relocated to California for approximately one month. Around this time, there was a string of burglaries at foreclosed and abandoned properties in Greenwich. The burglars stripped copper and other valuable

---

[1] One email to a town selectman describes "[h]undreds of people swarming our quiet street," an unsafe environment, and public urination.

materials from the buildings.  They were reported to be carrying guns and wearing body armor.

While plaintiff was in California, a property management company retained by BNYM secured the property and contacted GPD to ensure the property would be monitored.  GPD conducted regular patrols in the area and responded to several complaints of suspicious activity, including a report of "kids" breaking into the house and having a large party.  After the party, BNYM's management company placed a padlock on the garage door track to prevent its wheels from rolling up.

On November 18, patrolling officers saw that the garage door was open.  They entered, found no one, and secured a door allowing access to the home from the garage.  They reported "NO OTHER UNSECURE DOORS OR WINDOWS FOUND."  In the early morning hours of November 19, patrolling officers reported the "GARAGE DOOR THAT WAS CLOSED BY OFFICERS YESTERDAY WAS STILL CLOSED TODAY."

On the night of November 19, plaintiff, recently returned from California, contacted the GPD to report that the property had been burglarized.  Two officers responded; neither is a defendant in this suit.  According to the plaintiff, he told the officers that he was back from California and was driving a white GMC sport utility vehicle ("SUV") with Ohio plates.  The officers wrote down the license plate number and told him "we want to make

3

sure we know it's your car and that it's you here." One of the officers sent an email to the entire GPD advising that plaintiff had returned. The email did not mention the white SUV.

On November 21, patrolling officers reported "ALL DOORS AND WINDOWS APPEAR TO BE SECURE." This was the last patrol before the events at issue here.

On November 24, at 8:16 p.m., the GPD received a report that there was a "suspicious" white SUV in the driveway of the property. Defendant Officer Welsh and non-defendant Trainee Officer Justin Quagliani arrived at the scene at 8:31 p.m. They saw the SUV in the driveway, ran the plates, and discovered that the vehicle was registered to PV Holding Corp., an Ohio corporation. They approached the front door, knocked and rang the doorbell. There was no answer. Welsh noticed one of the third floor windows was illuminated. Officers Johnson, Berry and D'Inverno arrived at the scene. All the officers walked around the house, knocked on doors, shouted their presence and checked for any sign of forced entry.

According to the defendants, the garage door was off its track and there were signs that someone had attempted to break into the garage. Plaintiff disputes this. He would ask a jury to find that the defendants broke into the garage by tearing the door off its track and breaking the padlock installed by BNYM. He contends that a jury could draw that inference because he did

4

not notice anything wrong with the door until after the officers left the property.

What happened next is undisputed.  The officers entered the garage with their weapons drawn.  They opened an unlocked door leading from the garage into the house.  As they moved through the house, they continued to announce their presence.  They secured all the rooms on the first and second floors and made their way up to the third floor.  When they reached the third floor, plaintiff came out of a room in his underwear and shouted, "get the f**k out of here," "you don't have a warrant," and "get out of my house!"  Officer Johnson holstered his weapon and ordered the other officers to do the same.  He asked plaintiff to calm down and explained that they were investigating a suspicious vehicle at the property.  Plaintiff continued to tell them to leave.  Approximately one minute after encountering the plaintiff, the officers left.

II. Legal Standard

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether this standard

is met, the evidence must be viewed in the light most favorable to the non-moving party. Id. at 255.

III. Discussion

Plaintiff claims that defendants' warrantless entry violated the Fourth Amendment. Defendants argue that summary judgment should be granted because they did not violate the Fourth Amendment and, even if they did, they are entitled to qualified immunity. I agree that the defendants are protected by qualified immunity.

Qualified immunity "serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense situations and when their actions could reasonably be seen as lawful." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995). An officer is shielded from a suit for damages under § 1983 if "it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008) (citation omitted). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand what he is doing is unlawful.'" District of Columbia v. Wesby, __ S. Ct. __, 2018 WL 491521, at *9 (Jan. 22, 2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). The standard protects "all but the plainly incompetent or those who knowingly violate the law."

6

Malley v. Briggs, 475 U.S. 335, 341 (1986).

Searching a home without a warrant is presumptively unlawful. However, officers may conduct a warrantless search when there is "probable cause plus exigent circumstances." Kirk v. Louisiana, 536 U.S. 635, 638 (2002). Defendants argue, and I agree, that it was objectively reasonable for them to believe a burglary was occurring at the property, which provided exigent circumstances justifying a warrantless entry.

A. Probable Cause

Probable cause to search is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). For purposes of conducting a warrantless arrest, probable cause exists when officers have knowledge of facts and circumstances justifying a belief by a prudent person that an offense has been or is being committed. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause is "a practical, nontechnical conception," based on "common sense conclusions about human behavior." Gates, 462 U.S. at 231. It is "a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232.

Qualified immunity shields an officer from liability for a search if he can show "arguable probable cause": either because

it was "objectively reasonable . . . to believe that probable cause existed" or "officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (citations and quotation marks omitted). The arguable probable cause standard is "more favorable" to officers than the actual probable cause standard, but it is not "toothless": qualified immunity will not apply if reasonable officers "would have to agree" that the information does not "add up" to probable cause - even if it "came close." Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012) (citation omitted).

Based on the facts known to the defendants at the time of the warrantless entry, I think they had arguable probable cause to believe a burglary was in progress. The defendants were responding to a report from a concerned neighbor that there was a suspicious vehicle at the property. None of the defendants knew plaintiff was using a white SUV with Ohio plates.[2] A string of

---

[2] Plaintiff argues that the information he provided to other officers on November 19 regarding his use of the vehicle can be imputed to the defendants. He relies on the collective knowledge doctrine, which provides that, "for the purpose of determining whether an officer had probable cause for an arrest, where 'law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all." Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003)(quoting Illinois v. Andreas, 463 U.S. 765, 772 n.5 (1983)). "[T]he doctrine has traditionally been applied to *assist* officers in establishing probable cause - not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge." Savino, 331 F.3d at 74. The doctrine does not support plaintiff's argument that the knowledge of the officers he spoke

8

burglaries had recently occurred at foreclosed and abandoned properties in the area, including at least one break-in at this very property while the plaintiff was in California. Plaintiff himself had reported a burglary at the property the previous week. See United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984) ("The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely."); accord United States v. Gomez, 633 F.2d 999, 1004 (2d Cir. 1980). Prior to entering, the officers repeatedly made their presence known by ringing the doorbell, knocking and shouting. A light was illuminated on the third floor but there was no response to their calls. See Murdock v. Stout, 54 F.3d 1437, 1442 (9th Cir. 1995) (officers responding to report of suspicious activity had probable cause because door was open, lights and television were illuminated, and no one responded to their calls). While some of these circumstances may be consistent with a finding of no criminal activity, I cannot "dismiss outright any circumstances that [are] 'susceptible of innocent explanation.'" Wesby, 2018 WL 491521, at *9 (quoting United States v. Arvizu, 534 U.S. 266, 277 (2002)). Considering

---

to on November 19 should be imputed to the defendants in order to defeat arguable probable cause. See United States v. Santa, 180 F.3d 20, 28 (2d Cir. 1998); United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986).

9

the totality of the circumstances, a reasonable officer could conclude there was a fair probability a burglary was in progress.

Plaintiff argues that a jury could find that the garage door was not ajar when the defendants arrived. I think a jury would have difficulty finding that the officers broke in as the plaintiff claims. The mere fact that he did not notice anything wrong with the door until after the officers left seems insufficient to support the dramatic inference he would ask a jury to draw. Even assuming a jury could reasonably find that the door was not ajar, however, that finding would not defeat qualified immunity based on arguable probable cause.

There was no "clearly established" law prohibiting warrantless entry in similar circumstances in the absence of a sign of a break-in. Plaintiff has not identified "a controlling case or robust consensus of cases" finding "a Fourth Amendment violation under similar circumstances." See Wesby, 2018 WL 491521, at *12 (quotation omitted). In fact, courts have found actual probable cause in similar circumstances. See United States v. Tibolt, 72 F.3d 965, 970 (1st Cir. 1995) (officers responding to security alarm had probable cause despite no signs of a break-in when they found closed, unlocked door and received no response to calls); United States v. Porter, 288 F. Supp. 2d 716, 720 (W.D. Va. 2003) (same).

10

B. Exigent Circumstances

In determining whether exigent circumstances exist to justify a warrantless search, "[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer . . . to believe that there was an urgent need to render aid or take action." United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008) (citations and quotation marks omitted).[3] Similar to the "arguable probable cause" standard, an officer is shielded from liability for a warrantless entry if it was objectively reasonable to believe exigent circumstances justified the entry or "reasonable officers could disagree as to whether exigent circumstances were present." Loria, 306 F.3d at 1287.

Probable cause to believe a burglary is occurring at a residence has been held sufficient to justify a warrantless entry due to the exigent circumstance posed by the risk of imminent harm to any lawful occupants. See United States v. Washington, 573 F.3d 279, 288 (6th Cir. 2009) ("In burglary cases, the possibility that a lawful resident has been injured or is being

---

[3] Factors to consider include "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry." Loria v. Gorman, 306 F.3d 1271, 1284 (2d Cir. 2002).

11

held hostage gives rise to exigent circumstances."); see also In re Sealed Case 96-3167, 153 F.3d 759, 766 (D.C. Cir. 1998) (citing First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuit precedents holding that "probable cause to believe a burglary is in progress constitutes exigent circumstances sufficient to permit a warrantless entry"). Here, reports of recent burglaries in the area carried out by persons carrying guns and wearing body armor made it objectively reasonable for the officers to think an immediate entry was justified.

IV. Conclusion

Accordingly, the motion for summary judgment is granted. The Clerk may enter judgment and close the file.

So ordered this 8th day of February 2018.

/s/
Robert N. Chatigny
United States District Judge